UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
RACHEL BABBITT,

                          Plaintiff,

              -against-                                    **MEMORANDUM AND ORDER**
                                                           18 CV 5242 (NGG) (CLP)
KOEPPEL NISSAN, INC., *et al.*,

                          Defendants.
-----------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:


On September 18, 2018, plaintiff Rachel Babbitt commenced this action against

Koeppel Nissan, Inc., Mark C. Lacher, and Nelson Onofre (collectively, "defendants"), alleging

that defendants discriminated against her based on her gender, retaliated against her, and

terminated her, in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e,

et seq.

Presently before the Court is plaintiff's May 21, 2019, request for discovery, in which she

seeks an Order from the Court directing defendants to provide documents and substantive

responses to plaintiff's interrogatories. In addition, defendants filed a separate motion to compel

discovery on May 29, 2019, objecting to a number of plaintiff's discovery responses. For the

reasons stated herein, the parties' requests are granted in part and denied in part.

DISCUSSION

1. Legal Standards

    a. Federal Rule of Civil Procedure 26

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery in federal cases.

Rule 26(b)(1) authorizes:

discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"'Relevance' under Rule 26 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on any issue that is or may be in the case.'" Crosby v. City of New York, 269 F.R.D. 267, 282 (S.D.N.Y. 2010) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). While the scope of discovery is "broad," it is not "limitless." Fears v. Wilhelmina Model Agency, Inc., No. 02 CV 4911, 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004).

Thus, the Rule requires the Court to limit the extent of discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit." Id.; Fed. R. Civ. P. 26(b)(2)(C).

2. Plaintiff's Motion to Compel

On May 21, 2019, plaintiff filed a letter outlining defendants' alleged deficiencies in their discovery responses. She argues that the responses to the following requests are improper: Document Requests Nos. 9, 10, 14, 27, 28, 30, 31, 32 and Interrogatories Nos. 7, 8, 14, 18, 20, 21, and 25. The Court addresses each in turn.

a. Plaintiff's Document Requests

Document Request Nos. 9 and 10: Plaintiff requests the personnel files of defendants Lacher and Onofre.

Defendants object to this request, stating that production of defendants' entire personnel files is overly broad. (Defs.' Opp.[1] at 1). They request that plaintiff be directed to narrow the scope of the request to specific categories of documents and provide a specific basis for requesting each document. (Id.) In response, plaintiff argues that she should not be required to "speculate about what may be contained in the file." (Pl.'s Reply[2] at 2).

As formulated, the request is overly broad and potentially encompasses defendants' health records and other personal information not related to this action. Plaintiff should specify the categories of documents that she seeks from the files and explain their relevance to this case.

Document Request No. 14: Plaintiff requests communications between defendants and their employees pertaining to plaintiff.

Defendants argue that this request is unduly burdensome because it would require defendants to search every email that every employee ever sent. (Defs.' Opp. at 2). Moreover, defendants claim that communications about topics such as "meetings, sales of vehicles, requests for vacation, and paperwork have no bearing" on the instant matter. (Id.) They request that plaintiff be directed to narrow the scope of this request to include only communications between specific individuals concerning specific topics that relate to her claims.

In response, plaintiff claims that since plaintiff only worked for defendants for less than a

---

[1] Citations to "Defs.' Opp." refer to defendants' letter in opposition to plaintiff's letter outlining discovery deficiencies, dated May 29, 2019, ECF No. 29.
[2] Citations to "Pl.'s Reply" refer to plaintiff's letter in response to defendants' opposition, dated May 29, 2019, ECF No. 31.

year, the scope of the request is limited in time. (Pl.'s Reply at 2).

The Court agrees with defendants that the request as currently formulated is still overly broad. Accordingly, plaintiff is directed to narrow the request to communications between specific individuals concerning specific topics that relate to this case.

Document Request No. 27: Plaintiff requests documents related to any investigation conducted by defendants into any charges, complaints, allegations and/or reports, formal or informal, of any discrimination, harassment, and retaliation, made by plaintiff against defendants.
Document Request No. 28: Plaintiff requests documents, including handwritten notes and witness statements, which were taken in the course of defendants' investigation into plaintiff's allegations of gender discrimination, sexual harassment, and retaliation.

Defendants object to these two requests because they are overly broad, unduly burdensome, vague, and the documents requested are protected by attorney client privilege. In their opposition, defendants claim that the only documents that are responsive to these requests are declarations related to interviews conducted after the lawsuit was commenced. (Defs.' Opp. at 2). Defendants therefore argue that the declarations are privileged. (Id.) Defendants further explain that plaintiff filed the instant letter with the Court before defendants had an opportunity to provide a privilege log. (Id.)

Plaintiff responds by referring to defendants' Twelfth Affirmative Defense, which states that "to the extent, if at all, Plaintiff notified Koeppel Nissan, Inc. of any discrimination and/or availed herself of the preventive and corrective opportunities provided to her, Koeppel Nissan, Inc. promptly investigated and, if and to the extent appropriate, took corrective action." (Pl.'s Ltr.[3] at 2). Plaintiff claims that with this defense, defendants have put their investigation into

_____

[3] Citations to "Pl.'s Ltr." refer to plaintiff's letter outlining discovery deficiencies, dated May 21, 2019, ECF No. 24.

plaintiff's claims of harassment at issue. (Id. (citing Koumoulis v. Indep. Fin. Mktg. Grp., Inc., 295 F.R.D. 28, 41 (E.D.N.Y. 2013))). As a result, plaintiff asserts, the privilege was waived.

With respect to plaintiff's assertion that defendants have put the investigation at issue in this case, courts consider whether an employer has waived the privilege of investigation documents in light of the Faragher/Ellerth defense. This defense provides that an "employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." Vance v. Ball State Univ., 570 U.S. 421, 424, 133 S. Ct. 2434, 2439, 186 L. Ed. 2d 565 (2013). Thus, "'[w]hen an employer puts the reasonableness of an internal investigation at issue by asserting the Faragher/Ellerth defense, the employer waives any privilege that might otherwise apply to documents concerning that investigation.'" Robinson v. Vineyard Vines, LLC, No. 15 CV 4972, 2016 WL 845283, at *4 (S.D.N.Y. Mar. 4, 2016) (quoting Koumoulis v. Indep. Fin. Mktg. Grp., Inc., 295 F.R.D. at 41). In other words, "when a Title VII defendant affirmatively invokes a Faragher-Ellerth defense that is premised, in whole in or part, on the results of an internal investigation, the defendant waives the attorney-client privilege and work product protections for not only the report itself, but for all documents, witness interviews, notes and memoranda created as part of and in furtherance of the investigation." Angelone v. Xerox Corp., No. 09 CV 6019, 2011 WL 4473534, at *2 (W.D.N.Y. Sept. 26, 2011). Therefore, in order for plaintiff and the factfinder to examine the reasonableness of the investigation, disclosure of the underlying investigation materials is necessary. Brownell v. Roadway Package Sys., Inc., 185 F.R.D. 19, 25 (N.D.N.Y. 1999).

Courts in the Second Circuit have found that in the employment discrimination context, an employer's investigation may "shift[ ] from an internal investigation in response to [plaintiff's] claims to an investigation for the purposes of mounting a legal defense against any such claims." Prince v. Madison Square Garden, L.P., 240 F.R.D. 126, 128 (S.D.N.Y. 2007); see also Robinson v. Vineyard Vines, LLC, 2016 WL 845283, at *3. Thus, for example, one court held that investigation documents produced before an employee was terminated were discoverable, but documents produced after her termination were protected work product, because the focus of the investigation after her termination shifted to a "need to prepare for the likelihood of litigation." Welland v. Trainer, No. 00 CV 0738, 2001 WL 1154666, at *2 (S.D.N.Y. Oct. 1, 2001), aff'd sub nom. Welland v. Citigroup Inc., 116 F. App'x 321 (2d Cir. 2004).

At this juncture, the Court does not have sufficient information to determine whether any of the documents at issue are protected from disclosure, or whether disclosure is required in light of defendants' assertion that the company investigated her claims and took corrective action. The Court lacks specific information as to when the documents were actually created, why they were created, or by whom. Indeed, defendants do not even specify in their opposition whether they are invoking the protections of the attorney client privilege or the work product doctrine. (See Defs.' Opp. at 2). Accordingly, the Court directs defendants to provide a privilege log to plaintiff, if they have not already done so. The Court reminds defendants that because they are the party claiming the privilege, it is their burden "to establish those facts that are the essential elements of the privileged relationship." von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 144 (2d Cir. 1987). After the privilege log is produced to plaintiff, she will be permitted to raise

objections to particular documents that have been withheld.

The Court also notes that it is well established that the attorney client privilege "does not protect disclosure of the underlying facts by those who communicated with the attorney." Upjohn Co. v. United States, 449 U.S. 383, 395, 101 S. Ct. 677, 685, 66 L. Ed. 2d 584 (1981). To that end, the Court Orders that in addition to producing a privilege log, defendants disclose the names of the individuals interviewed for the investigation, "[t]o ensure that Plaintiff will have full access to the facts underlying this action." See Robinson v. Time Warner, Inc., 187 F.R.D. 144, 148 (S.D.N.Y. 1999).[4]

Document Request No. 30: Plaintiff requests documents that relate to any complaints, charges, reports or allegations, formal or informal of gender discrimination, sexual harassment, and retaliation, which were made by any person against defendants or any of their employees, agents, managers, officers, supervisors, directors, at any time within the last five (5) years.
Document Request No. 31: Plaintiff requests documents that relate to any and all complaints filed with and/or pending before the Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York State Unemployment Insurance Appeal Board, the New York State Workers Compensation Board or any other Court, tribunal or administrative agency against defendants alleging gender discrimination, sexual harassment, and retaliation.

Defendants argue that these requests are vague, overbroad, unduly burdensome and seek irrelevant documents. (Defs.' Opp. at 3). They state that should the Court direct them to respond to these requests, plaintiff should be required to narrow the documents to "complaints of hostile work environment and retaliation . . . by employees in the same department as the plaintiff." (Id. (citing Bolia v Mercury Print Prods. Inc., No. 02 CV 6510T, 2004 WL 2526407,

---

[4] Although in response to Interrogatory No. 20, defendants argue that plaintiff "does not allege that she ever complained to Koeppel Nissan about the alleged sexual harassment," they curiously do not make the same argument here in response to Document Requests Nos. 27 and 28. (Defs.' Opp. at 5). In any event, even if they had made such an argument, the Court would direct defendants to plaintiff's Amended Complaint, paragraphs 26-28. See infra p. 11.

at *2 (W.D.N.Y. Oct. 28, 2004))).

Plaintiff responds that any claims of discrimination, retaliation, or disciplinary action are relevant to the claims in this case. (Pl.'s Reply at 3). Moreover, plaintiff alleges that defendants have put their policies and procedures governing complaints of discrimination at issue in their Twelfth Affirmative Defense, in which they assert that they "maintained policies prohibiting discrimination" and "provided procedures through which employees can notify it of violations." (Id.) Thus, plaintiff contends that she should be permitted to "test this defense" by examining these documents. (Id.)

"Broader discovery is warranted when a plaintiff's claims are premised on a pattern or practice of discrimination at the organization-wide level, as opposed to specific allegations of discrimination made against an individual supervisor." Chen-Oster v. Goldman, Sachs & Co., 293 F.R.D. 557, 562 (S.D.N.Y. 2013). In this case, plaintiff does not appear to allege a pattern or practice of discrimination, but bases her Complaint upon allegations against the two named supervisors directed at her personally. Therefore, the Court limits these requests to any and all complaints of gender discrimination, sexual harassment, and retaliation by employees in plaintiff's employment department or unit. See id. If plaintiff believes that her department or unit is unreasonably small in relation to the rest of the company, she should state her concerns in a letter and provide a description of the organization of the company to the Court. Furthermore, to allay any privacy concerns, any documents responsive to these requests shall be produced pursuant to the Confidentiality Stipulation, which was endorsed by this Court on April 17, 2019.

Document Request No. 32: Plaintiff requests annual income statements and state and federal tax returns from defendant Koeppel Nissan for the 2015, 2016, 2017, 2018, and 2019 fiscal years.

Plaintiff maintains that this request is proper given her request for punitive damages. (Id. (citing Hamm v. Potamkin, No. 98 CV 7425, 1999 WL 249721, at *2 (S.D.N.Y. Apr. 28, 1999))). Defendants respond that such a request is premature, since defendants have not placed their ability to pay at issue. (Defs.' Opp. at 3).

"Courts in this circuit are split on the issue of allowing pretrial disclosure of financial information relevant to a determination of punitive damages." Copantitla v. Fiskardo Estiatorio, Inc., No. 09 CV 1608, 2010 WL 1327921, at *16 (S.D.N.Y. Apr. 5, 2010). Here, the Court agrees with those cases that have found disclosure of financial information premature at this stage. Thus, defendants need not provide a response to Document Request No. 32. Plaintiff may renew her request at a later stage in the proceedings.

### b. Plaintiff's Interrogatories

Interrogatory No. 7: In this interrogatory, plaintiff asks that defendants state whether plaintiff ever engaged in any illegal activity related to her employment with defendants, including but not limited to any form of theft from the defendants or their clients/customers, and for each such instance, if any, identify the date and circumstances of the alleged crime, any witnesses thereto, and any individuals with knowledge of the alleged instance.

Interrogatory No. 8: In this interrogatory, plaintiff asks that defendants state whether plaintiff ever engaged in any negligence related to her employment with defendants, including but not limited to losing or misplacing any money or financial documents entrusted to her by defendants or their clients/customers, and for each such instance, if any, identify the date and circumstances of the alleged negligence, any witnesses thereto, and any individuals with knowledge of the alleged instance.

Defendants again assert that these requests are "vague, overbroad, unduly burdensome" and seek irrelevant information. Defendants also state that they are willing to produce additional information subject to a Court-Ordered protective order. (Defs.' Opp. 4). Moreover, defendants explain that they commenced an action in Queens and served plaintiff with the complaint that

describes the misconduct referenced in these interrogatories. (Id.)

Plaintiff asserts that these interrogatories are relevant to the statement that defendants made at the initial conference before this Court, in which they accused plaintiff of engaging in criminal activity. (Pl.'s Ltr. at 4). In addition, she argues that they may be relevant to some of defendants' affirmative defenses. (Id.)

The Court notes that referring plaintiff to a state court complaint is not a proper response to an interrogatory. The Court finds that these interrogatories seek information that is relevant to the claims and defenses in this case, and directs defendants to respond to them in writing. With respect to defendants' statement that they will provide a substantive answer subject to a protective order, the Court reiterates that it endorsed one on April 17, 2019.

Interrogatory No. 14: Plaintiff asks defendants to identify any and all officers, agents and/or employees of defendant Koeppel Nissan who were responsible for creating any policy by which employees were required to complain of sexual harassment, gender discrimination, and/or retaliation.

In addition to their boilerplate objections, defendants argue that this request seeks information protected by attorney client privilege. They also indicated that they would provide a substantive response to this request, but plaintiff filed the instant letter before they had an opportunity to do so. (Defs.' Opp. at 4). Thus, defendants are directed to respond to this interrogatory if they have not done so already.

Interrogatory No. 18: Plaintiff asks defendants to identify all persons with knowledge or information concerning anti-gender discrimination, anti-sexual harassment, and anti-retaliation training offered by defendants to its employees within the last five (5) years.

Defendants responded by stating "all of Defendant Koeppel Nissan's employees" have knowledge or information concerning training. (Pl.'s Ltr. at 5). They contend that requiring

them to identify all of their employees for the past five years is unduly burdensome.

Plaintiff claims that this interrogatory seeks relevant information based on defendants' Twelfth Affirmative Defense, which states that Koeppel Nissan "maintained policies prohibiting discrimination" and "provided procedures through which employees can notify it of violations." (Pl.'s Ltr. at 5). Moreover, if all of defendants' employees have such knowledge, plaintiff argues that she has the right to depose them and requests that the Court direct defendants to identify them. (Id.)

The Court directs defendants to identify the people responsible for preparing policies and procedures relating to discrimination and sexual harassment within the last five (5) years. Moreover, the Court directs defendants to identify the people responsible for formulating and conducting any anti-gender discrimination, anti-sexual harassment, and anti-retaliation training offered by defendants to its employees within the last five (5) years.

Interrogatory No. 20: Plaintiff asks defendants to identify all individuals who have in any way, either verbally or in writing, either formally or informally, complained of discrimination and/or retaliation while employed by defendants within the last five (5) years, including but not limited to current employees.

Plaintiff again argues that this interrogatory seeks relevant information based on defendants' Twelfth Affirmative Defense. (Id.) Although defendants claim that such information is not relevant because plaintiff never complained about the alleged harassment, plaintiff refers to the Amended Complaint, which alleges: "Defendants were made aware of the sexual harassment and then terminated Plaintiff two hours later." (Pl.'s Reply at 3 (citing SAC[5]

---

[5] Citations to "SAC" refer to plaintiff's Second Amended Complaint, filed on May 9, 2019, ECF No. 23.

¶¶ 26-28)). In addition, plaintiff asserts that this interrogatory is relevant to her contention that defendants failed to ensure that adequate channels were in place to report harassment. (Id. at 4).

As with Document Request Nos. 30 and 31, the Court limits this request to individuals in plaintiff's department or unit who have complained of discrimination and/or retaliation while employed by defendants within the last five (5) years, including but not limited to current employees.

Interrogatory No. 21: Plaintiff asks defendants to identify all persons with information or knowledge concerning each affirmative defense stated in defendants' Answer. This interrogatory includes but is not limited to any and all defenses that may be raised and/or asserted to defend against liability in this matter.

After providing their boilerplate objections, defendants respond: "all of Defendant Koeppel Nissan's employees." (Pl.'s Ltr. at 6). Plaintiff again asserts that she should be permitted to depose these individuals, and requests that the Court compel defendants to identify them. (Id.)

In response, defendants argue that this interrogatory "consists of 25 separate interrogatories as there are 25 affirmative defenses" which runs afoul of Rule 33 of the Federal Rules of Civil Procedure. (Defs.' Opp. at 5).

The Court notes that it is within its discretion to allow the parties to serve additional interrogatories. See Fed. R. Civ. P. 33(a)(1). Thus, since the Court finds this interrogatory relevant to the case, defendants are directed to respond. Specifically, defendants are directed to identify specific individuals with information or knowledge about each specific defense. Simply responding that "all of Defendant Koeppel Nissan's employees" have knowledge is not sufficient and is not a good faith response.

<u>Interrogatory No. 25</u>: Plaintiff asks defendants to state whether defendant Lacher knows Joe Gianelli and whether defendant Lacher discussed this lawsuit or plaintiff with Mr. Gianelli.

According to the Second Amended Complaint, Joe Gianelli was plaintiff's manager while she was employed at Nissan of Staten Island. (SAC ¶ 41). Plaintiff states in her Reply that defendants indicated that they would respond to this interrogatory. (Pl.'s Reply at 5). Therefore, defendants are required to provide a response if they have not done so already.

3. <u>Defendants' Motion to Compel</u>

Defendants have also filed a motion to compel, arguing that the following responses from plaintiff are improper: Document Requests Nos. 7, 8, 9, 29, 53, 17, 28, 33, 34, 40, 49, and 51, and Interrogatories Nos. 5, 6, 9, 10, and 12. The requests are outlined below.

a. <u>Defendants' Document Requests</u>

<u>Document Requests Nos. 7, 8, 9, 29, and 53</u>: In response to these five document requests, plaintiff refers to documents 1-56 as responsive. Defendants contend that none of the documents are responsive to these requests.

Plaintiff is directed to indicate which specific documents are responsive to the specific requests.

<u>Document Request No. 17</u>: Defendants request social networking information that reveals, refers, or relates to (1) any emotion, feeling, or mental state, as well as communications that reveal, refer, or relate to events that could reasonably be expected to produce a significant emotion, feeling, or mental state; (2) your efforts to secure other employment; (3) your employment with Koeppel Nissan, Inc.; (4) your claims against Defendants; (5) you socializing with employees of Koeppel Nissan, Inc. outside of work; and (5) your romantic relationships with employees of Koeppel Nissan, Inc.)

Defendants argue that the information is relevant and cite cases that have approved disclosure of posts that reveal, refer, or relate to any emotion, feeling, or mental state, as well as communications that reveal, refer, or relate to events that could reasonably be expected to

produce a significant emotion, feeling, or mental state. (Defs.' Mot. at 2 (citing <u>Reid v. Ingerman Smith LLP</u>, No. 12 CV 0307, 2012 WL 6720752, at *2 (E.D.N.Y. Dec. 27, 2012))).

Plaintiff objects to this request, asserting that it is vague, unduly burdensome, and an undue invasion of her privacy. Furthermore, plaintiff argues that courts have held that social media posts are not discoverable unless defendants demonstrate that public posts contradict plaintiff's claims. (Pl.'s Opp.[6] at 1-2 (citing <u>Reid v. Ingerman Smith LLP</u>, 2012 WL 6720752, at *1)). In <u>Reid v. Ingerman Smith LLP</u>, while the court did not require the defendant to make a threshold showing that the public posts contradicted the plaintiff's claims, it is clear that the Court considered the public posts in concluding that the private postings may also be reflective of the plaintiff's emotional state. 2012 WL 6720752, at *1.

By contrast, in <u>Giacchetto v. Patchogue–Medford Union Free School District</u>, the court addressed the defendants' request for all of the plaintiff's social media postings. 293 F.R.D. 112 (E.D.N.Y. 2013). The Court noted that an individual's "express[ion of] some degree of joy, happiness, or sociability on certain occasions sheds little light on the issue of whether he or she is actually suffering emotional distress." <u>Id.</u> at 115. In that case, the court denied the defendants' request for all posts, but directed the plaintiff to produce posts containing "specific references to the emotional distress she claims she suffered or treatment she received in connection with the incidents underlying her Amended Complaint." <u>Id.</u> at 116. The court also ruled that because the plaintiff sought emotional distress damages, "any postings on social networking websites that refer to an alternative potential stressor" to the alleged discrimination had to be produced. <u>Id.</u>

---

[6] Citations to "Pl.'s Opp." refer to plaintiff's opposition to defendants' motion to compel, filed on May 31, 2019, ECF No. 33.

The Court finds the reasoning in <u>Giacchetto v. Patchogue–Medford Union Free School District</u> persuasive, and directs plaintiff to produce posts containing specific references to the emotional distress she claims she suffered or treatment she received in connection with the incidents underlying her Second Amended Complaint.  Moreover, since plaintiff is seeking emotional distress damages, she is directed to produce any postings on social networking websites that refer to an alternative potential stressor to the alleged discrimination.[7]

<u>Document Request No. 28</u>: Defendants request all communications, including but not limited to e-mails and text messages, of a sexual nature, between Plaintiff and any employees of Koeppel Nissan, Inc.

Defendants argue that this information is relevant in order for plaintiff to prove that she suffered <u>unwelcome</u> harassment in the workplace, as required for a hostile work environment claim.  (Defs.' Mot. at 2 (emphasis in original)).  Defendants refer to a number of cases that have held that the plaintiff's conduct is probative of whether the behavior from the defendants was unwelcome or not.  (<u>Id.</u> at 3).

Plaintiff argues that this request is overly broad, and argues that the cases cited by defendants contain "outdated, offensive, politically incorrect" phrases, such as "one of the boys." (Pl.'s Opp. at 3).  Moreover, she argues that many of the cases cited by defendants involve

_____

[7] The Court respectfully disagrees with the reasoning in <u>Reid v. Ingerman Smith LLP</u> insofar as it suggests that such a broad disclosure of anything that reveals an emotional state is not overly broad.  Virtually every post on social media can relate to an emotion, feeling, or mental state, or can relate to events that could reasonably be expected to produce a significant emotion, feeling, or mental state.  Given that courts generally agree that "wholesale production of a litigant's social media accounts" is not proper, <u>Thurmond v. Bowman</u>, No. 14 CV 6465W, 2016 WL 1295957, at *10 (W.D.N.Y. Mar. 31, 2016) (citing cases), <u>report and recommendation adopted</u>, 199 F. Supp. 3d 686 (W.D.N.Y. 2016), the Court finds that the approach taken in <u>Giacchetto v. Patchogue–Medford Union Free School</u> is more targeted and thus more likely to produce relevant information.

15

plaintiffs who sought out sexual contact with the alleged harasser, which she states did not occur

here. (Id.) She indicates that if this request is not denied in its entirety, it should be limited to

sexual communication between plaintiff and defendants, which she states does not exist. (Id. at

2).

The Court finds communications of a sexual nature between plaintiff and any employee

of defendant Koeppel are irrelevant to the claims and defenses here. Given that plaintiff has

stated that there are no sexual communications between herself and any named defendant, the

Court finds that she need not respond to this request.

Document Request No. 33: Defendants request the federal and state tax returns that Plaintiff has
filed from 2012 through the present.

Defendants claim that a response to this request is necessary because plaintiff has made a

claim for lost wages and benefits, and her tax returns will reveal her earnings before and after her

termination. (Defs.' Mot. at 4). In addition, defendants argue that they need her tax returns in

order to challenge her credibility in the event that she did not file tax returns or her tax returns

contained false information. (Id.) Finally, defendants claim that they cannot attain the

information that they seek from any other source. (Id.)

In response, plaintiff argues that she has already produced W-2s, 1099s, and paystubs

from seven entities and thus production of her tax returns is not required. (Pl.'s Ltr. 3).

Courts are generally reluctant to order the production of personal financial documents

and have imposed a heightened standard for the discovery of tax returns. See Michelman v.

Ricoh Ams. Corp., No. 11 CV 3633, 2013 WL 664893, at *2 (E.D.N.Y. Feb. 22, 2013) (quoting

287 Franklin Ave. Residents' Ass'n v. Meisels, No. 11 CV 976, 2012 WL 1899222, at *7

(E.D.N.Y. May 24, 2012)) (noting that "[a]lthough tax returns are not privileged documents, courts are 'reluctant to order their discovery in part because of the private nature of the sensitive information contained therein, and in part from the public interest in encouraging the filing by taxpayers of complete and accurate returns'").

A party seeking to compel production of tax returns in civil cases must meet a two-part showing that: "(1) the returns must be relevant to the subject matter of the action, and (2) a compelling need must exist because the information is not readily obtainable from a less intrusive source." Sadofsky v. Fiesta Prods., LLC, 252 F.R.D. 143, 149 (E.D.N.Y. 2008) (citation omitted); see also Carmody v. Village of Rockville Ctr., No. 05 CV 4907, 2007 WL 2042807, at *2 (E.D.N.Y. July 13, 2007).

Here, defendants have failed to satisfy this standard. Given the fact that plaintiff has already produced financial documents to defendants, the Court finds that there is no additional information in plaintiff's tax returns that would be relevant to defendants' defenses. Thus, plaintiff need not respond to this request, and defendants may renew this request at a later stage in the proceedings should new information become available.

Document Request No. 34: Defendants request all documents related to compensation that plaintiff received after her termination from Koeppel Nissan.

Defendants contend that plaintiff has not produced all of her pay stubs. (Defs.' Mot. at 5). Plaintiff reiterates that she has provided W-2s, 1099s, and paystubs from seven entities. (Pl.'s Opp. at 4). She further states that she has "provided proof of the total amount of income from every single employer she has had" since she left defendants' employ. (Pl.'s Opp. at 4).

Since defendants have not identified specific documents that they claim are missing, and given plaintiff's assertion that she has provided proof of her total income, the Court finds that plaintiff is not required to respond to this request.

Document Request No. 40: All documents pertaining to injuries and/or disabilities that have prevented you from working for any period of time after your employment with Koeppel Nissan terminated.

Plaintiff explains in her opposition that after she was terminated in March 2018, she was employed by Nissan of Staten Island in May 2018, earning a similar salary that she earned with defendants. (Pl.'s Opp. at 4). Thereafter, she resigned in August 2018 and underwent surgery in October 2018. (Id.) She then began working at Nissan of Yorktown Heights from December 2018 to March 2019. Finally, since March 2019, she has worked at Chrysler, Dodge, Jeep, Ram, Fiat of Manhattan. (Id.) Plaintiff further states that she is not claiming lost earnings beyond the May 2018 hire at Nissan of Staten Island. (Id.) In addition, she seeks a protective order for medical records that were produced to the Court in camera regarding the surgery in October 2018. (Id. at 4-5). In support of the protective order, she argues that the surgery was for a "serious and private medical condition completely unrelated to her case." (Id. at 4).

Defendants argue that they are entitled to this medical information because she is seeking damages for emotional injury valuing $500,000. (Defs.' Reply at 4). Specifically, defendants argue that they are entitled to information regarding other potential stressors in her life, such as medical conditions that may be revealed in the records. (Id.)

"[C]ourts have held that where a plaintiff seeks damages for 'garden-variety' emotional distress, the plaintiff has not put his medical history in issue, nor has he waived his physician-patient privilege." Misas v. North-Shore Long Island Jewish Health Sys., No. 14 CV 8787, 2016

18

WL 4082718, at *4 (S.D.N.Y. July 25, 2016) (quoting Brown v. Kelly, No. 05 CV 5442, 2007

WL 1138877, at *2 (S.D.N.Y. Apr. 16, 2007)). In a claim involving garden variety emotional

distress:

> the evidence of mental suffering is generally limited to the testimony of the
> plaintiff, who describes his or her injury in vague or conclusory terms,
> without relating either the severity or consequences of the injury. Such
> claims typically lack extraordinary circumstances and are not supported by
> any medical corroboration.

Dotson v. City of Syracuse, No. 5:04 CV 1388, 2011 WL 817499, at *14 (N.D.N.Y. Mar. 2,

2011), aff'd, 549 F. App'x 6 (2d Cir. 2013) (quoting Olsen v. County of Nassau, 615 F.Supp.2d

35, 46-47 (E.D.N.Y. 2009)). "[D]efendants' claim . . . that any physical malady might cause

emotional distress . . . scarcely gives defendants a license to rummage through all aspects of the

plaintiff's life in search of a possible source of stress or distress, particularly with respect to

information that the governing law treats as especially sensitive." Evanko v. Elec. Sys. Assocs.,

Inc., No. 91 CV 2851, 1993 WL 14458, at *2 (S.D.N.Y. Jan. 8, 1993).

In this case, as discussed below, plaintiff claims that she is only seeking garden variety

emotional damages. (Pl.'s Opp. at 5). While plaintiff represents that she is not seeking lost

earnings past May 2018, she does not specify the time period for which she is seeking emotional

damages. Accordingly, plaintiff is to provide a declaration, stating that she is only seeking

garden variety emotional damages, confirming the value of the damages, and indicating the time

period for which she is seeking such damages. If she is not seeking emotional damages beyond

May 2018, she need not produce the medical records at issue. See Misas v. North-Shore Long

Island Jewish Health Sys., 2016 WL 4082718, at *4 (stating that "[i]f Plaintiffs seek only garden

variety damages, then they need not provide medical corroboration for any alleged injury, nor

can they be said to have put their entire physical and mental condition at issue"). In addition, if there were no injuries or disabilities after her employment with defendant Koeppel through May 2018, plaintiff shall include such information in the declaration.

Document Requests Nos. 49, 51: Plaintiff's medical records and pharmacy records from January 1, 2013 through present.

Defendants argue that this request is relevant because of plaintiff's allegation that she suffered extreme stress and anxiety as a result of the alleged harassment. (Defs.' Opp. at 6).

Plaintiff responds that she has not had any psychological treatment or counseling relating to the incident, and "the only psychological injury she is claiming in this case are garden variety emotional damages." (Pl.'s Opp. at 5).

In response, defendants reiterate that plaintiff "has placed her entire medical condition into controversy by alleging Defendants caused her to suffer severe emotional distress for which she seeks $500,000 in damages." (Defs.' Reply at 4). Moreover, they claim that plaintiff has erroneously limited this request to mental health care specialists, when in actuality, defendants seek her entire medical file. (Id.) They suggest that this information is relevant because if she "received any medical treatment while she was suffering the alleged emotional distress and failed to inform the medical provider, such an omission is relevant with respect to her allegation of severe emotional distress." (Id.)

As discussed above, plaintiff is to provide a declaration clarifying her position on emotional damages.

### b. Defendants' Interrogatories

Interrogatory No. 5: Defendants seek the name and address of all companies to whom plaintiff submitted her resume or otherwise contacted regarding a potential job opportunity, as well as the name of the position title for which she applied.

Plaintiff objects that this interrogatory is overly broad and seeks narrative information that is better suited for a deposition. Plaintiff also provides the names of three companies in her response. In response to defendants' deficiency letter, plaintiff further supplements that at each company, she was the Financial Manager. (Pl.'s Opp., Ex. B[8]).

Defendants argue that plaintiff failed to provide information regarding companies to which she applied but was not hired. (Defs.' Mot. at 6). In her opposition, plaintiff claims that she provided a printout from Indeed.com that includes a list of nine companies to whom plaintiff applied for employment. (Pl.'s Opp. at 5). Defendants argue that a printout from Indeed.com is not a proper interrogatory response. (Defs.' Reply at 5).

Interrogatories must be answered "in writing under oath." Fed. R. Civ. P. 33(b)(3). Although the Rule contemplates situations in which parties can answer interrogatories by producing business records, see Fed. R. Civ. P. 33(d), the Indeed.com printout does not appear to constitute a business record. See also United States ex rel. Landis v. Tailwind Sports Corp., 317 F.R.D. 592, 595 (D.D.C. 2016) (noting that Rule 33 "cannot be used for documents other than "business records"). Thus, plaintiff is directed to provide the information contained in the

---

[8] Citations to "Ex. B" refer to Plaintiff's Response to Defendants' Deficiency Letter, attached as Exhibit B to plaintiff's opposition, dated May 8, 2019, ECF No. 33. There appears to be a dispute as to whether this letter constitutes a response to discovery. (See Pl.'s Opp. at 6). As long as plaintiff's counsel has provided a verification from plaintiff with this supplemental letter, the Court will consider such a letter a response to discovery.

printout in written form to defendants. If the printout lacks certain information that defendants

seek, they are directed to set forth what additional information is needed.

Interrogatory No. 6: For the period covering plaintiff's employment with Koeppel Nissan, Inc.
and continuing through the present, defendants seek the names of all prospective employers that
contacted plaintiff regarding her resume submission. They also seek information regarding the
substance of the communication, regardless of whether she viewed the communication as
positive or negative.

For this interrogatory, plaintiff referred defendants to her answer to Interrogatory No. 5.

In addition, she argues that questions about the substance of the communication are better suited

for a deposition. (Pl.'s Opp. at 5).

The Court finds that defendants' question seeking the substance of each oral

communication is more appropriately explained during a deposition. Accordingly, unless there

are documents responsive to this request that have not been produced, defendants' request is

denied. These issues may be addressed during plaintiff's deposition.

Interrogatory No. 9: Defendants seek the name of each prospective employer that offered
plaintiff a job from the period covering her employment with Koeppel Nissan, Inc. and
continuing through the present, and for each prospective employer, state: (a) the position offered;
(b) the compensation offered; (c) the benefits offered; and (d) whether or not she accepted the
offer, and if she did not accept the offer, state the reason.

For this interrogatory, plaintiff referred defendants to her answer to Interrogatory No. 5.

Defendants explain that Interrogatory No. 5 did not seek information about compensation and

benefits, and plaintiff should be required to provide such information. (Defs.' Mot. at 7).

Plaintiff indicates that she has provided a "list of all entities from whom she

sought employment post-termination." (Pl.'s Opp. at 5). Moreover, she has provided W-2s and

1099s from each company that employed her after she was terminated from defendant Koeppel

Nissan, "or, in the case of her current employer, the most recent paystub." (Id.) Defendants appear to be seeking compensation information from companies that offered her a job that she did not accept. To the extent that there are any, plaintiff should respond.

Interrogatory No. 10: Defendants ask plaintiff to identify every entity that has paid her as an employee or independent contractor (including self-employment) since her employment with Koeppel Nissan, Inc. ended, regardless of whether she was paid in cash or by check, and for each position state the compensation and benefits she received.

Again, plaintiff referred defendants to her answer to Interrogatory No. 5. She also provided the names of six companies as a response to this Interrogatory. Plaintiff indicates that she has already provided this information to defendants, in the form of W-2s, 1099s, and pay stubs. (Pl.'s Opp. at 6). The Court agrees, and finds that plaintiff need not provide an additional response to this Interrogatory.

Interrogatory No. 12: Defendants ask plaintiff to identify any injury or disability that has prevented her from working at any period of time since the termination of her employment with Koeppel Nissan, Inc.

Plaintiff responded that she "suffered from a temporary physical condition that kept her from working intermittently between August and the end of October 2018 and then completely from approximately the end of October 2018 until the middle of December 2018."

For this interrogatory, the parties refer the Court to their arguments regarding Document Request No. 40. Accordingly, for the reasons stated above with respect to that request, the Court finds that plaintiff need not provide an additional response to this Interrogatory.

4. Depositions

Finally, the parties disagree as to the scheduling of plaintiff's deposition. Defendants refuse to schedule plaintiff's deposition until they receive the documents and information

requested and conduct an independent medical examination of plaintiff. (Defs.' Opp. at 7).

The parties are to provide the documents in accordance with this opinion within two weeks, by **August 6, 2019**, as well as a proposed schedule for completing depositions.

<u>CONCLUSION</u>

In light of the foregoing, defendants' requests and plaintiff's requests are granted in part and denied in part.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      July 23, 2019             /s/ Cheryl L. Pollak

                               Cheryl L. Pollak
                               United States Magistrate Judge
                               Eastern District of New York